# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00192-CV

---

**Southern California Sunbelt Developers, Inc.; and Dan Baer, Appellants**

**v.**

**Donald B. Grammer; Colchester Management Services, LLC; Blanco Realty Advisors Limited Partnership, L.L.P.; Brenda J. Grammer; GGDG, Ltd.; Daralyn E. Grammer-Allen; Big A Technology Limited; Apple Management Services, LLC; Gregory M. Grammer; Cherry Blossom Limited Partnership; Lemon Leaf Limited Partnership; Colchester Financial Limited Partnership; Jaguar-Piaget Limited Partnership; and Dinvest, Ltd., Appellees**

---

**FROM THE 33RD DISTRICT COURT OF BLANCO COUNTY
NO. CV08260, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

Southern California Sunbelt Developers, Inc. (Sunbelt) and Dan Baer challenge the district court's order granting a Rule 91a motion for failure to state a claim and the court's subsequent judgment awarding attorney's fees under Rule 91a to Appellees. *See* Tex. R. Civ. P. 91a.1 (authorizing party to seek dismissal of cause of action on ground that it has no basis in law or fact), .7 (addressing award of attorney's fees and costs to prevailing party).[1] Appellees are

---

[1] Recently, the Texas Supreme Court gave final approval to an amendment of Rule 91a.7 making an award of attorney's fees discretionary, rather than mandatory. *See* Final Approval of Amendments to Texas Rule of Civil Procedure 91a.7, Nov. 12, 2019 (Tex. Misc. Docket No. 19-9108). Because this amendment to Rule 91a.7 applies only to civil actions commenced on or after September 1, 2019, it is inapplicable to the underlying suit filed in 2017.

four family members (Donald B. Grammer, Brenda J. Grammer, Daralynn E. Grammer-Allen, and Gregory M. Grammer) (collectively, the Grammers) and ten Grammer entities (Colchester Management Services, LLC; Blanco Realty Advisors Limited Partnership, L.L.P.; GGDG, Ltd.; Big A Technology Limited; Apple Management Services, LLC; Cherry Blossom Limited Partnership; Lemon Leaf Limited Partnership; Colchester Financial Limited Partnership; Jaguar-Piaget Limited Partnership; and Dinvest, Ltd.).

In four issues, Appellants contend that the district court erred by: (1) granting the Rule 91a motion to dismiss their causes of action; (2) looking beyond the pleadings and considering evidence in derogation of Rule 91a.6; (3) refusing to reconsider the dismissal order; and (4) awarding costs and attorney's fees that were excessive and not supported by legally sufficient evidence. We will reverse the dismissal order and the judgment for costs and attorney's fees and remand this cause to the district court.

## BACKGROUND

The factual background of this appeal is complex because of the long history of litigation between the parties. In the underlying Texas suit, filed on April 26, 2017, Appellants and IBT International, Inc. sued Appellees to enforce certain cost awards: (1) a 2011 judgment against Donald Grammer[2] in favor of IBT for $24,747.19 issued by a United States bankruptcy court in California; and (2) a 2014 order against two Nevada limited partnerships that Donald Grammer formed, Banyan Limited Partnership and Orange Blossom Limited Partnership,[3] in favor of Sunbelt for $40,749.24 and in favor of Baer for $42,091.48 issued by a California trial

---

[2] This bankruptcy-court judgment was also entered against David H. Tedder, a nonparty to the underlying suit and this appeal.

[3] This trial-court order was also entered against multiple other entities who are nonparties to the underlying suit and this appeal.

2

court. The underlying suit sought to enforce the foreign-court cost awards and alleged that the Grammers evaded payment of those awards through a conspiracy to fraudulently transfer and hide assets in multiple alter ego entities. Appellants also requested a declaration that two general partners, Donald B. Grammer and Apple Management Services, were liable for the debts of Banyan and Orange Blossom. Appellees filed a general denial that did not plead any affirmative defenses and then filed a counterclaim. A few weeks later, Appellees filed a Rule 91a motion to dismiss for failure to state a claim.[4]

**Material facts in amended petition**

Appellants filed their First Amended Petition one week before the hearing on the Rule 91a motion. Because allegations in the live pleading are essential to this appeal, we consider the amended petition in some detail.[5] The amended petition identified Apple Management Services, LLC as general partner for the Banyan and Orange Blossom limited partnerships. This pleading further alleged that both limited partnerships filed for bankruptcy:[6]

- [Appellants] hold cost awards arising out of the judgment rendered in the California litigation styled Case No. 764271; *Van Dan Limited, et al. v. Dan W. Baer, et al.; Superior Court of the State of California, County of Orange-Central Justice Center* (the "Van Dan Litigation"). Subsequent to the rendering of the judgment, [Appellants] filed their claims for costs. On November 13, 2014, the Court awarded costs to Sunbelt in the amount of $40,749.00 and Baer in the amount of $42,091.00, plus interest. These orders for costs were rendered against multiple parties including Banyan Limited Partnership and Orange Blossom Limited Partnership, jointly and severally.

---

[4] While the Rule 91a motion was pending, Donald B. Grammer settled with IBT International, Inc. as to the bankruptcy-court judgment that IBT obtained against Grammer, except as to the issue of attorney's fees. IBT is not a party to this appeal.

[5] We omit the amended petition's allegations as to IBT, a nonparty to this appeal.

[6] The record reflects that the Banyan and Orange Blossom limited partnerships filed for chapter 7 bankruptcy on September 27, 2013.

**Although Banyan Limited Partnership and Orange Blossom Limited Partnership have filed for bankruptcy, Apple** [Management Services, LLC]**, as the general partner of these limited partnerships, is jointly and severally liable for these foreign judgment debts.** [Emphasis added.]

- Don Grammer and his multimillion-dollar businesses went into bankruptcy in the early 1990s.  Since that event, Don Grammer has claimed poverty, despite the fact that he earns almost a half a million dollars every year and is upon information and belief worth well over $10 million.  Nonetheless, the Grammer Family continues to own numerous entities worth millions of dollars (many jointly owned by Don Grammer) over which Don Grammer exercises control and management, and as the Grammer Family Certified Public Accountant has previously testified, the Grammer Family members use these entities as their personal checkbooks.  Most money and/or interests held in the names of the various Grammer Family members has been owned and controlled by Don Grammer.

- Demand for payment of the debts set out above was made, but the Defendants failed to pay the sums due and owing.  Given the past dealings Plaintiffs have had with Don Grammer, he and his family have attempted to insulate themselves from third-party creditors in improper ways.  Plaintiffs upon information and belief assert that Don Grammer, and in conspiracy with the other Defendants, or alternatively some of them, used the [ten] Defendant Entities improperly in a process to conceal property and/or interests, hinder, delay or defraud creditors, such as Plaintiffs

- **Until in or about January of 2011, Don Grammer was the managing member of and the controlling individual for most of the Defendant Entities.  Subsequently, the controlling individual allegedly became Gregory M. Grammer**.  [Emphasis added.]  However, Plaintiffs assert that Don Grammer really kept control of the Defendant Entities for his benefit and to benefit other Grammer family members as he directed.  **In further related wrongful activity, Don Grammer and/or other Grammer Family members have improperly transferred many of their ownership and property interests in or to the Defendant Entities to others for inadequate consideration and/or with actual intent to hinder, delay, or defraud creditors, including Plaintiffs**.  [Emphasis added.]

- Further, upon information and belief, Don Grammer used his own monies, or alternatively controlled funds that were his, to acquire certain real and personal property and maintain it in the name of the other Defendants.  Don Grammer and/or the other Grammer Family members used the Defendant Entities as their own and made various transfers whereby such entities acquired or divested certain property interests, including real property, during

the past few years, while keeping personally insulated from ownership of same, all for personal benefit and that of the Grammer Family members. Don·Grammer and the other Grammer Family members, individually, and in concert with one another, used Defendant Entities as their alter ego and/or as alter egos of others in part or in whole, to defraud creditors, including Plaintiffs, in Blanco County, Texas, and/or with actual intent to hinder, delay, or defraud creditors, including Plaintiffs.

- Further, upon information and belief, Don Grammer, in concert with Brenda J. Grammer, Daralyn E. Grammer-Allen, and Gregory M. Grammer, operate out of numerous intertwined entities. Plaintiffs maintain this was done by the Grammer Family to improperly insulate Don Grammer and/or the other Grammer Family members from creditors, especially judgment creditors such as Plaintiffs, and to hide money including in real property holdings.

- Plaintiffs make claim against Defendants in alter ego, fraud, fraudulent transfer, and conspiracy, and involving all property, including any real property, held in various Defendants names. Such real property was either purchased or improved by monies that were fraudulently concealed from creditors, such as Plaintiffs, and creditors in similar situation.

**Causes of action and grounds for relief in amended petition**

Based on the "facts, statements and allegations" above, Appellants pled these "Causes of Action and Grounds for Relief": (1) foreign-judgment enforcement; (2) fraud/fraudulent transfer; (3) alter ego, traditional veil piercing, or reverse piercing; (4) discovery rule; (5) continuing-tort doctrine; (6) general-partner liability; (7) conspiracy; (8) aiding and abetting; and (9) declaratory judgment.[7] Their foreign-judgment enforcement and fraud/fraudulent-transfer causes of action are pled in some detail, including these excerpts:

Foreign Judgment Enforcement. Additionally, and as more specifically described above, cost awards arising out of the judgment entered in the above referenced Van Dan Litigation were rendered in favor of Appellants against multiple parties including limited partnerships, Banyan Limited Partnership and Orange Blossom Limited Partnership. Apple was the general partner of these limited partnerships at all relevant times. As the general partner, it is jointly and severally liable for

---

[7] The "causes of action" listed in the pleading consisted of legal theories and remedies.

5

this judgment debt for costs and Plaintiffs are entitled to enforce and recover this debt against Apple in this action. Further, all Defendants are jointly and severally liable for these cost awards on the grounds set forth in this petition.

Fraud/Fraudulent Transfer. Don Grammer and/or other Grammer Family members transferred monies, interests, real property and/or, alternatively, other benefits through Defendants, and/or in or to the Defendant Entities, and all the other Defendants, with the intent to hinder, delay and defraud Plaintiffs as creditors or without receiving equivalent value in exchange for the transfer or obligation and Don Grammer was engaged in transactions or business for which his remaining assets were unreasonably small relatively, and to prevent Plaintiffs from recovering the amount justly due them for the following reasons among others: (a) Don Grammer and/or other Grammer Family members maintained possession and control of real property or personal property after transfer to and among Defendants, in total or alternatively in part; (b) Don Grammer and the other Grammer Family members concealed assets; (c) Transfers to or of Defendants were made for inadequate consideration; (d) Transfers to or of Defendants were concealed; (e) Transfers to or of Defendants were made to insiders; (f) Transfers were of substantially all Don Grammer's and/or other Grammer Family members' nonexempt assets; (g) Transfers occurred shortly before or after substantial debts were incurred; and (h) Transfers were made with actual intent to hinder, delay, or defraud Plaintiffs.

Don Grammer, and/or the other Defendants from which transfers have passed or originated, did not receive a reasonably equivalent value for the real property or, alternatively, personal property interests, transferred and Don Grammer, and/or the other Defendants, were insolvent, or made to appear that way, either at the time or as a result of the transfer and/or was engaged or about to be engaged in a business or transaction for which remaining assets were unreasonably small and/or intended to incur debts beyond an ability to pay as they became due. At the time of the transfer, Don Grammer, and/or the other Defendants did not have sufficient nonexempt property, or were capable at any time to be made that way, in addition to the real property and/or, alternatively, other interests transferred, to satisfy his debts and was generally not paying debts as they became due. One such transaction was an August 2014 transfer by Don Grammer and G. Grammer partnership interest in Orange Blossom Limited Partnership.

On November 26, 2013, Judge N. Keith Williams, in litigation that included all parties named herein, excepting IBT, entered a court order that found under the Texas Declaratory Judgment Act that Don Grammer was mutually liable for the debt of Orange Blossom Limited Partnership to Sunbelt. **On or about July 5, 2013, Don Grammer withdrew as general partner of Orange Blossom Limited Partnership, and in concert with his son, Gregory M. Grammer, put**

6

> **in his place as general partner, Apple, which company has had no assets and no ongoing business for at least since 2006**. [Emphasis added.]
>
> . . . .
>
> Further, and additionally, the value of the fraudulent transfers [by] Don Grammer, as assisted and aided by the Grammer Family members, is shown in the federal income tax filings made with the Internal Revenue Service. The categories shown in such returns, and related financial documents prepared by Defendants' accountants, show as "distributions" the amount of value each Grammer Family member improperly obtained each year from each of the Defendant Entities, and such values are a measure of the fraud perpetuated on Plaintiffs, as to each of the Defendants.

Appellants requested relief under the Texas Uniform Fraudulent Transfer Act (TUFTA), and alleged that the Grammer entities' corporate form or forms should be disregarded because the Grammers used the entities improperly, e.g., as a sham to perpetrate a fraud and to evade existing legal obligations. *See* Tex. Bus. & Com. Code §§ 24.001-.013 (Texas Uniform Fraudulent Transfer Act). Appellants alleged that "the discovery rule applies to any of the causes of action Defendants contend are barred by the statute of limitations." *See id.* § 24.010(a)(l) (discussing discovery rule under TUFTA). They further alleged that under the continuing tort doctrine, "the applicable statute(s) of limitations have not begun to run" due to "the repetitive wrongful acts and scheme of Defendants used to wrongfully avoid paying the obligation of the claims made the subject of this lawsuit, since 2006."

**Bankruptcy issue**

At a hearing on the motion to dismiss held on July 28, 2017, Appellees noted that the two Nevada limited partnerships—Banyan and Orange Blossom—were in bankruptcy court.[8]

---

[8] Appellants initially denied that their pleading contained any mention of bankruptcy, but they ultimately acknowledged pleading that Banyan and Orange Blossom had filed for bankruptcy.

Further, Appellees contended that: (1) the enforcement claims had not been reduced to judgment in California or domesticated in Texas; (2) Sunbelt's $40,729.20 cost award "fit within the release language" of a settlement agreement between the parties in a prior suit in Gillespie County; and (3) some of the causes of action in Appellants' pleading were subject to a two-year statute of limitations.

The district court found the bankruptcy issue persuasive. The court stated its inclination to grant the motion to dismiss and requested additional briefing addressing whether Appellants could bring claims on assets that were under the control of a bankruptcy trustee:

> But my question and the reason why I would grant the motion [to dismiss] from what I've heard is based on the idea that the $40,749 and the $42,091 were against these entities that are now in bankruptcy and if anyone is going to go after the general partner it would have to be the bankruptcy trustee because the bankruptcy trustee is the proper entity to have that claim I think.

The parties agreed to waive the deadline for the court's ruling on the motion to dismiss and provided the requested additional briefing. *See* Tex. R. Civ. P. 91a.3(c) (requiring trial court to grant or deny motion to dismiss within 45 days after filing of motion). The district court subsequently granted Appellees' motion to dismiss in an order signed September 6, 2017, explaining the bankruptcy concern:

> The only claims that remained, at the time of hearing Defendants' Rule 91a Motion to Dismiss, and thus the only claims for this Court to consider, involve a $40,749 cost award to Southern California Sunbelt Developers, Inc. and a $42,091 cost award to Dan Baer, both from a November 13, 2014, order of the Superior Court of the State of California, County of Orange in Case No. 764271, and charged against Banyan Limited Partnership and Orange Blossom Limited Partnership. . . . Banyan and Orange Blossom are Nevada Limited Partnerships that are not parties to this litigation and are both involved in pending Bankruptcy proceedings in California, as known by the Plaintiffs at the time of filing this action. The remaining claims in this litigation all flow directly from the

Plaintiffs' attempts to collect these amounts from the General Partners of Banyan and Orange Blossom.

Under Nevada law, the debtor Limited Partnerships are empowered to compel their General Partner[s] to pay the debts of the debtor partnerships. *See* Nevada Revised Statutes 87A.365, 87A.530. Applying Bankruptcy Code Section 541(a), this power became property of the respective bankruptcy estates upon the filing of debtors' bankruptcy cases. Because the claims against any General Partner[s] are property of the bankruptcy estates, the trustee is given full authority over those claims. To allow a single creditor to prosecute its collection action for its own benefit would interfere with the debtor Limited Partnerships' right under Nevada law to pursue the same action for the benefit of all creditors, consistent with the fundamental purpose of bankruptcy law, as Nevada law provides that, "If a limited partnership's assets are insufficient to satisfy all of its obligations . . . , with respect to each unsatisfied obligation incurred . . ., each person that was a General Partner . . . SHALL contribute to the limited partnership for the purpose of enabling the limited partnership to satisfy the obligation. N.R.S. 87A.530 (3.)(a) (emphasis added). Thus, Nevada law empowers the debtor Limited Partnerships the right to compel contributions from its partners, and allowing the plaintiffs in this action to proceed would necessarily impair the debtors' exercise of its right to compel their General Partner[s] to pay their debts, interfering with property of the estate, and allowing the plaintiffs to avoid the fundamental bankruptcy principle of preserving property of the estate to ensure a ratable distribution to creditors. Bankruptcy vests the right to prosecute such claims in the trustee, who is given complete authority over them, for the benefit of all creditors, and to protect the interests of all creditors by treating like-situated claimants equally.

As such, and considering the only claims at issue in this motion flow directly from the debts of Banyan and Orange Blossom, Nevada Limited Partnerships known to the Plaintiffs to be in Bankruptcy, and with such claims being under the full authority of the respective Bankruptcy Trustee(s), the Defendants' Rule 91a Motion to Dismiss is hereby GRANTED.

Thus, the district court's order on the Rule 91a motion addressed only whether there was a legal—not factual—basis for the causes of action; i.e., whether Appellants were entitled to the relief they sought on their claims as pled.

9

**Motion to reconsider**

Appellants filed a motion to reconsider, notifying the district court that the bankruptcy proceedings as to Banyan and Orange Blossom had been dismissed and closed. The district court heard and denied the motion on September 24, 2018, concluding that its order on the motion to dismiss was based on the information it had when it ruled in 2017.

At the hearing on the motion to reconsider, Appellees presented testimony for their attorney's fees as prevailing parties on their Rule 91a motion. The court signed a judgment awarding Appellees $136,016.60 in attorney's fees, plus conditional appellate attorney's fees. As to the conditional appellate attorney's fees, the order recited:

> The Court further awarded to Defendants attorney fees in the amount of $25,000 in the event of an unsuccessful appeal to the Third Court of Appeals and $30,000 in the event of an unsuccessful appeal to the Texas Supreme Court.

**Motion for permissive appeal**

Appellants then filed a motion for permissive appeal, contending that the parties disagreed on a "controlling issue of law," i.e., whether the bankruptcy trustee owned the claims sought to be enforced in the lawsuit. The district court heard the motion on November 9, 2018, and denied it.

**Baer's amended motion for summary judgment**

Baer subsequently filed a motion for summary judgment and an amended motion as to Appellees' counterclaim. The district court granted Baer's amended motion for summary judgment February 28, 2019, disposing of all remaining claims and parties. The summary-

judgment order was not appealed. This appeal challenges only the district court's rulings in favor of Appellees' on their Rule 91a motion to dismiss and award of attorney's fees.

## DISCUSSION

**Rule 91a and standard of review**

Rule 91a targets causes of action that lack legal or factual bases. A cause of action has no legal basis under Rule 91a "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." Tex. R. Civ. P. 91a.1. A cause of action has no factual basis under Rule 91a "if no reasonable person could believe the facts pleaded." *Id*. A Rule 91a motion to dismiss must identify each cause of action it attacks and specify why the claim has no basis in law or in fact (or both). *Id*. R. 91a.2. Rule 91a prohibits a trial court from considering evidence when ruling on the motion and requires a decision "based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59." *Id*. R. 91a.6; *see also id*. R. 59 (providing that documents "constituting, in whole or in part, the claim sued on, or the matter set up in defense," may be deemed part of pleadings).

We review the district court's rulings on the Rule 91a motion de novo. *See City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016); *Ruth v. Crow*, No. 03-16-00326-CV, 2018 Tex. App. LEXIS 3079, at \*2-3 (Tex. App.—Austin May 2, 2018, pet. denied) (mem. op.) (citing *Sanchez*, 494 S.W.3d at 724); *Koenig v. Blaylock*, 497 S.W.3d 595, 599 (Tex. App.—Austin 2016, pet. denied) (reviewing de novo trial court's decision on Rule 91a motion and applying fair-notice pleading standard). We construe pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings to

11

determine whether the cause of action has a basis in law or fact. *Koenig*, 497 S.W.3d at 599; *see Sanchez*, 494 S.W.3d at 725 (applying same standard in context of Tort Claims Act). "Dismissal on the pleadings is a harsh remedy, requiring courts to strictly construe rule 91a's requirements." *Renate Nixdorf GmbH & Co. KG v. TRA Midland Props., LLC*, No. 05-17-00577-CV, 2019 Tex. App. LEXIS 26, at *27 (Tex. App.—Dallas Jan. 3, 2019, pet. denied) (mem. op.) (citing *Gaskill v. VHS San Antonio Partners, LLC*, 456 S.W.3d 234, 238 (Tex. App.—San Antonio 2014, pet. denied)).

As we have noted, Appellants contend that the district court erred by: (1) granting the Rule 91a motion to dismiss their causes of action; (2) looking beyond the pleadings and considering evidence in derogation of Rule 91a.6; (3) refusing to reconsider the dismissal order; and (4) awarding attorney's fees that were excessive and not supported by legally sufficient evidence.

**Rule 91a dismissal under Nevada limited partnership law and bankruptcy law**

In their first issue, Appellants challenge the district court's determinations that: (1) under sections 87A.365 and 87A.530 of Nevada Revised Statutes,[9] "the debtor Limited Partnerships are empowered to compel their General Partner[s] to pay the debts of the debtor partnerships"; and (2) under section 541(a) of the Bankruptcy Code, "this power became property of the respective bankruptcy estates upon the filing of debtors' bankruptcy cases." Appellants contend that "far from being matter-of-law issues warranting Rule 91a dismissal" such "questions about whether, and to what extent, a general partner may be held jointly and

---

[9] These statutes are part of the Nevada Limited Partnership Act. *See generally* Nev. Rev. Stat. §§ 87A.005-.700.

severally liable are fact-intensive and raise disputed evidentiary matters unsuitable for Rule 91a

dismissal."

1. **Nevada Revised Statutes § 87A.530 ("Disposition of assets; when contributions are required.")**

Section 87A.530 of the Nevada Revised Statutes states:

1. In *winding up* a limited partnership's activities, the assets of the limited partnership, including the contributions required by this section, must be applied to satisfy the limited partnership's obligations to creditors, including, to the extent permitted by law, partners that are creditors.

2. Any surplus remaining after the limited partnership complies with subsection 1 must be paid in cash as a distribution.

3. If a limited partnership's assets are insufficient to satisfy all of its obligations under subsection 1, with respect to each unsatisfied obligation incurred when the limited partnership was not a limited-liability limited partnership,[10] the following rules apply:

(a) Each person that was a general partner when the obligation was incurred and that has not been released from the obligation under NRS 87A.465 shall contribute to the limited partnership for the purpose of enabling the limited partnership to satisfy the obligation. The contribution due from each of those persons is in proportion to the right to receive distributions in the capacity of general partner in effect for each of those persons when the obligation was incurred.

(b) If a person does not contribute the full amount required under paragraph (a) with respect to an unsatisfied obligation of the limited partnership, the other persons required to contribute by paragraph (a) on account of the obligation shall contribute the additional amount necessary to discharge the obligation. The additional contribution due from each of those other persons is in proportion to the right to receive distributions in the capacity of general partner in effect for each of those other persons when the obligation was incurred.

---

[10] The partnership agreements in the record show that Bayan and Orange Blossom are limited partnerships, not "limited-liability limited partnerships."

13

(c) If a person does not make the additional contribution required by paragraph (b), further additional contributions are determined and due in the same manner as provided in that paragraph.

4. A person that makes an additional contribution under paragraph (b) or (c) of subsection 3 may recover from any person whose failure to contribute under paragraph (a) or (b) of subsection 3 necessitated the additional contribution. A person may not recover under this subsection more than the amount additionally contributed. A person's liability under this subsection may not exceed the amount the person failed to contribute.

5. The estate of a deceased natural person is liable for the person's obligations under this section.

6. An assignee for the benefit of creditors of a limited partnership or a partner, or a person appointed by a court to represent creditors of a limited partnership or a partner, may enforce a person's obligation to contribute under subsection 3. Except as otherwise provided in subsections 2 and 3, all general partners are liable jointly and severally for all obligations of the limited partnership unless otherwise agreed by the claimant or provided by law.

Nev. Rev. Stats. § 87A.530 (emphasis added). Appellants correctly note that the first subsection of this statute specifies that it applies "in winding up a limited partnership's activities." *Id*. § 87A.530(1). On this narrow point, all parties agree that Banyan and Orange Blossom limited partnerships were not being wound up, they filed for bankruptcy. Nevada law does not expressly provide that a bankruptcy filing causes a limited partnership to wind up. *See id*. §§ 87A.488-.530 (addressing dissolution of limited partnerships generally). Thus, 87A.530 of the Nevada Revised Statutes is inapplicable to Banyan and Orange Blossom under the plain language of the law, and does not support the district court's Rule 91a dismissal order. *See Silguero v. CSL Plasma*, 579 S.W.3d 53, 59 (Tex. 2019) (noting that "[i]n interpreting statutes, we must look to the plain language, construing the text in light of the statute as a whole" and that "[a] statute's plain language is the most reliable guide to the Legislature's intent."); *see also Kim v. Dickinson*

14

*Wright, PLLC*, 442 P.3d 1070, 1073 (Nev. 2019) ("[W]e will apply a statute's plain language 'and construe the statute according to its fair meaning.'").

### 2. Nevada Revised Statutes § 87A.365 ("Liability of general partner.")

Section 87A.365 of the Nevada Revised Statutes states:

> 1.  Except as otherwise provided in subsections 2 and 3, all general partners are liable jointly and severally for all obligations of the limited partnership unless otherwise agreed by the claimant or provided by law.
>
> 2.  A person that becomes a general partner of an existing limited partnership is not personally liable for an obligation of a limited partnership incurred before the person became a general partner.
>
> 3.  An obligation of a limited partnership incurred while the limited partnership is a registered limited-liability limited partnership, whether arising in contract, tort or otherwise, is solely the obligation of the limited partnership. A general partner is not personally liable, directly or indirectly, by way of contribution or otherwise, for such an obligation solely by reason of being or acting as a general partner. This subsection applies despite anything inconsistent in the partnership agreement that existed immediately before the consent required to become a registered limited-liability limited partnership under paragraph (b) of subsection 2 of NRS 87A.375.

Nev. Rev. Stats. § 87A.365. Appellants correctly point out that this statute says nothing about a limited partnership's "power to compel" any action from a general partner, or when or how such power might be exercised. Further, Appellants contend that this statute does not defeat their "right to enforce their own cost awards *against* the Banyan and Orange Blossom general partner(s)" but rather, acknowledges that right, subject to any limitations under the "unless" clause in the first subsection of the statute. *See id*. § 87A.365(1) (providing that general partners are jointly and severally liable for all of limited partnership's obligations "unless otherwise agreed by the claimant or provided by law"). Appellants contend that any alleged "power to

15

compel" action from a general partner is not unlimited or self-executing because of the exceptions set forth in the second and third subsections of the statute, which discuss when a general partner is *not* personally liable for a limited partnership's obligation. *See id.* § 87A.365(2)-(3). Appellants note that the district court did not address those two subsections and that those subsections likely involve disputed fact issues, e.g., when the person became a general partner, when the limited partnership incurred the obligation, and whether the limited partnership incurred the obligation while it was a registered limited-liability limited partnership. *See id.*

Appellants contend that section 87A.365 considered in conjunction with section 87A.370 of the Nevada Revised Statutes is inconsistent with the district court's stated rationale for granting the 91a motion. *See id.* §§ 87.365, .370. Section 87A.370 is titled "Actions by and against partnership and partners[]" and provides that a general partner's judgment creditor—as Appellants are attempting to become—may execute against a general partner's assets to satisfy a judgment based on a claim against the limited partnership if the partner is personally liable for the claim under 87A.365 and "the limited partnership is a debtor in bankruptcy":

> 1. To the extent not inconsistent with NRS 87A.365, a general partner may be joined in an action against the limited partnership or named in a separate action.
>
> 2. A judgment against a limited partnership is not by itself a judgment against a general partner. A judgment against a limited partnership may not be satisfied from a general partner's assets unless there is also a judgment against the general partner.
>
> 3. A judgment creditor of a general partner may not levy execution against the assets of the general partner to satisfy a judgment based on a claim against the limited partnership, unless the partner is personally liable for the claim under NRS 87A.365 and:

16

(a) A judgment based on the same claim has been obtained against the limited partnership and a writ of execution on the judgment has been returned unsatisfied in whole or in part;

(b) The limited partnership is a debtor in bankruptcy;

(c) The general partner has agreed that the creditor need not exhaust limited partnership assets;

(d) A court grants permission to the judgment creditor to levy execution against the assets of a general partner based on a finding that limited partnership assets subject to execution are clearly insufficient to satisfy the judgment, that exhaustion of limited partnership assets is excessively burdensome or that the grant of permission is an appropriate exercise of the court's equitable powers; or

(e) Liability is imposed on the general partner by law or contract independent of the existence of the limited partnership.

*Id*. § 87A.370. Appellants contend that they were in the process of pursuing precisely the relief available under this statute because the judgment debtors—Banyan and Orange Blossom—were debtors in bankruptcy. *See id*. § 87A.370(3)(b).

Appellees respond that section 87A.370 does not apply because Appellants are not judgment creditors seeking to levy execution, Appellants' cost awards are not "judgments," and alternatively, if they were, they were not domesticated in Texas. Appellees' arguments are not persuasive.

As to the domestication argument, Appellants correctly state that an exception in the Texas Uniform Enforcement of Foreign Judgments Act provided them with an option to enforce their cost awards by bringing a common-law legal action, as they have done here. *See* Tex. Civ. Prac. & Rem. Code § 35.008 ("A judgment creditor retains the right to bring an action to enforce a judgment instead of proceeding under this chapter."); *Charles Brown, L.L.P. v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 902 (Tex. App.—Houston [14th Dist.] 2004, no pet.)

17

("In this case, by seeking enforcement of the Georgia judgment in the district court action, Lanier elected to pursue enforcement through a common-law action."). Appellants were suing for a judgment against a general partner under section 87A.370(2), which would authorize their recovery against the general partner's assets under section 87A.370(3). *See* Nev. Rev. Stats. § 87A.370(2)-(3). Further, under California law—applicable here because a California court issued the cost awards—a cost award quantified postjudgment is made part of the judgment. *See Bard v. Charles R. Myers Ins. Agency*, 839 S.W.2d 791, 795 (Tex. 1992) ("The validity of the judgment is determined by the laws of the state where it was rendered."); *Daus v. Daus*, No. 05-13-00060-CV, 2014 Tex. App. LEXIS 5249, at *5 (Tex. App.—Dallas May 14, 2014, pet. denied) (mem. op.) ("A properly proven foreign judgment or final, enforceable order must be recognized and given effect coextensive with that to which it is entitled in the rendering state."); *Bryant v. Shields, Britton & Fraser*, 930 S.W.2d 836, 842 (Tex. App.—Dallas 1996, writ denied) (concluding that Texas courts had to afford full faith and credit to liquidation order issued by Tennessee court that was considered final and enforceable order in Tennessee); *see also* Cal. Rules of Court, R. 3.1700(1)[11], (4)[12]; *see also Banyan Ltd. P'ship v. Baer*, No. GO51282, 2016 WL 4382635, at *8, *11 (Cal. Ct. App. Aug. 17, 2016) (affirming postjudgment order of costs and noting that court may award costs only after notice of entry of judgment or dismissal).

---

[11] Under this rule, "[a] prevailing party who claims costs must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal by the clerk under Code of Civil Procedure section 664.5 or the date of service of written notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first. The memorandum of costs must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case." Cal. Rules of Court, R. 3.1700(1) (formerly Rule 870).

[12] Under this rule, "[a]fter the time has passed for a motion to strike or tax costs or for determination of that motion, the clerk must immediately enter the costs on the judgment." *Id*. R. 3.1700(4).

### 3. 11 U.S.C. § 541 ("Property of the [bankruptcy] estate")

The last statutory basis specified in the district court's 91a order is section 541 of the Bankruptcy Code. That section broadly defines property of the bankruptcy estate as including "all legal or equitable interests of the debtor in property as of the commencement of the case[,]" "wherever located and by whomever held." 11 U.S.C. § 541(a)(1).

Appellees contend that Banyan's and Orange Blossom's bankruptcy filings created two bankruptcy estates and that Appellants' cost awards against Banyan and Orange Blossom, along with the fraudulent-transfer cause of action concerning collection of those awards, belonged to the bankruptcy estates. Appellees note that the bankruptcy estate property "includes all claims and causes of action a debtor could bring against others," "including all claims deriving from claims the debtor could bring, such as fraudulent transfer claims." *See MC Asset Recovery LLC v. Commerzbank A.G.* (*In re Mirant Corp.*), 675 F.3d 530, 534 (5th Cir. 2012) (noting that if creditor can, on date of bankruptcy, reach property that *debtor has transferred* to third party, trustee may step into creditor's shoes and avoid *debtor's transfer*). In Appellees' view, the cost awards and fraudulent-transfer claims were property of the bankruptcy estates and enforceable only by the chapter 7 bankruptcy trustee. Appellants disagree that the filing of the bankruptcy petitions changed their claims against the Banyan and Orange Blossom debtors or causes of action against the Grammers into assets of the two bankruptcy estates. We conclude that relevant bankruptcy law supports Appellants' position.

Because Appellants' cost awards were not "legal or equitable interests of the debtor [Banyan and Orange Blossom] in property as of the commencement of the [bankruptcy] case," those cost awards did not become property of the Banyan and Orange Blossom

19

bankruptcy estates. *See* 11 U.S.C. § 541(a) (defining "property of the estate"). Rather, the cost awards are legal and equitable interests belonging to Appellants, and a bankruptcy trustee "has no right to bring claims that belong solely to the estate's creditors." *Highland Capital Mgmt. LP v. Chesapeake Energy Corp.* (*In re Seven Seas Petroleum, Inc.*), 522 F.3d 575, 584 (5th Cir. 2008). "Whether a particular state-law claim belongs to the bankruptcy estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case." *Id.*; *see In re Leff*, 88 B.R. 105, 107 (Bankr. N.D. Tex. 1988) (noting that although federal law determines what is property of estate, state law governs debtor's interest in property in question; thus, reviewing court had to look initially to what interest debtors had in their pre-petition payment of money under state law when they filed their chapter 7 bankruptcy petition). As part of this inquiry, courts look to the nature of the injury for which relief is sought and consider the relationship between the debtor and the injury. *In re Seven Seas Petroleum*, 522 F.3d at 584. "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *Id.* (quoting *Schertz-Cibolo-Universal City Indep. Sch. Dist. v. Wright* (*In re Educators Grp. Health Trust*), 25 F.3d 1281, 1284 (5th Cir. 1994)). "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate." *Id.*

Here, the cost awards sought to be enforced do not allege harm to Banyan and Orange Blossom. The cost awards were issued against Banyan and Orange Blossom and in favor of Appellants after prevailing in litigation filed against them by Banyan, Orange Blossom, and

20

others. As of the commencement of their bankruptcy cases in 2013, Banyan and Orange Blossom could not have sought to enforce Appellants' 2014 cost awards against anyone.

Further, the fraudulent-transfer cause of action in the amended petition does not allege that either of the debtors, Banyan or Orange Blossom, transferred any property to a third party. *Cf. In re Mirant*, 675 F.3d at 534. There is no explicit or implicit allegation of harm to Banyan or Orange Blossom, nor any allegation that Appellants' cause of action is based on indirect harm sustained because of an injury to Banyan or Orange Blossom. Rather, the amended petition alleges transfers of assets—occurring only through and to the Appellees— intended to hinder Appellants as creditors.

Appellants' cost awards and fraudulent-transfer cause of action were not claims or actions that Banyan or Orange Blossom could have raised under applicable Nevada law as of the commencement of the bankruptcy case. *See In re Seven Seas Petroleum*, 522 F.3d at 584. Thus, we conclude that Appellants' cost awards and the fraudulent-transfer cause of action were not property of Banyan's or Orange Blossom's bankruptcy estates.

### 4. Bankruptcy trustee's action under 11 U.S.C. § 723(a)

Appellees contend that Appellants could not enforce their cost awards against any general partner of Banyan and Orange Blossom in a Texas court proceeding because a bankruptcy trustee has a cause of action under section 723(a) of the Bankruptcy Code against general partners of insolvent partnerships, and that cause of action is property of the bankruptcy estate. *See* 11 U.S.C. § 723(a). Section 723(a) of the Bankruptcy Code states that:

> If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter [11 USCS §§ 701 et seq.] concerning a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner to the

21

> extent that under applicable nonbankruptcy law such general partner is personally liable for such deficiency.

*Id*. A section 723(a) cause of action is "a federal cause of action for a chapter 7 trustee to compel contributions from general partners of insolvent partnership estates." *Searcy v. Acme Energy Co.* (*In re Payson Petro. 3 Well, L.P.*), Nos. 17-40179, 18-04074, 17-40180, 18-04076, 2019 Bankr. LEXIS 699, at *18 (Bankr. E.D. Tex. 2019) (quoting *Hoffman v. Ramirez* (*In re Astroline Commc'ns Co.*), 161 B.R. 874, 878-79 (Bankr. D. Conn. 1993)).

However, a section 723(a) cause of action does not exist as of the commencement of the case—which is required to be considered an interest in property of the bankruptcy estate under section 541(a)—and exists only if there is a deficiency: "[A] § 723(a) cause of action cannot accrue until after a trustee has been appointed and determines that a deficiency in assets exists, for which a claim can be made against the partners," or that such a deficiency is reasonably certain to exist. *Miller v. Spitz* (*In re CS Assocs.*), 156 B.R. 755, 758 (Bankr. E.D. Pa. 1993) (*Spitz I*); *see Hoffman*, 161 B.R. at 879 (quoting *Spitz I*, 156 B.R. at 758); *MBank Corpus Christi, N.A. v. Seikel* (*In re I-37 Gulf Ltd. P'ship*), 48 B.R. 647, 649 (Bankr. S.D. Tex. 1985) (noting that trustee of partnership debtor must exhaust partnership's assets before seeking claim against general partner, or at least must determine with reasonable certainty that such deficiency exists); *see also* 11 U.S.C. § 723(a) (providing cause of action when there is "deficiency of property of the estate to pay in full all" allowed claims of partnership's creditors).

Here, neither the Rule 91a motion nor the dismissal order established that there was a deficiency or a reasonable certainty that a deficiency of partnership assets would exist. Moreover, if Appellees had attempted to show a deficiency or a reasonable certainty that a deficiency would exist, that matter would have presented a fact issue that could not have been

determined from the pleadings alone and thus would have been unsuitable for dismissal under Rule 91a.[13] *See* Tex. R. Civ. P. 91a.6.

Additionally, section 723(a) specifies that the general partner can only be liable to the extent that the general partner would be personally liable for such deficiency under applicable non-bankruptcy law. 11 U.S.C. § 723(a); *Ehrenberg v. WSCR, Inc.* (*In re Hoover WSCR Assocs.*), Nos. CC-04-1390-MaMoP, CC-04-1391-MaMoP, 2005 Bankr. LEXIS 3267, at *28 (B.A.P. 9th Cir. 2005) (noting that history of section 723(a) "shows an aggressive policy to limit liability in accordance with state law" and that general partner who has no liability under state law for partnership's obligations will not have such liability imposed under section 723(a)). As previously discussed, the Nevada limited partnership statutes—the "applicable nonbankruptcy law" under section 723(a)—do not show that, as a matter of law, a general partner will always bear personal liability for a limited partnership's deficiency. Nevada law contains fact-dependent exceptions establishing when a general partner is not personally liable for a limited partnership's obligation. *See* Nev. Rev. Stats. § 87A.365(2)-(3) (considering several factors in determining whether general partner has personal liability, including when person became general partner, when limited partnership incurred obligation, and whether limited partnership incurred obligation while it was registered limited-liability limited partnership). The district court did not address any of these fact-dependent exceptions to a general partner's personal liability before issuing its Rule 91a dismissal.

---

[13] Appellants point out that summaries of Banyan's and Orange Blossom's bankruptcy schedules, which were attached in response to the Rule 91a motion, show that the estates were solvent and that nothing in the amended petition raised an issue of a deficiency.

23

**5. Stay of actions against debtor under 11 U.S.C. § 362**

In their Rule 91a motion and supporting brief, Appellees contended that the provisions of a statutory automatic stay in section 362 of the Bankruptcy Code applied to this case, and that Appellants were "attempting to circumvent such provisions" by pursuing Donald Grammer and Apple Management for the debts of Nevada entities by virtue of their general partner status. Appellees emphasized that "[s]uch stay has not been lifted in part or in whole."

When a defendant files a bankruptcy petition, an automatic stay takes effect under section 362 of the Bankruptcy Code. *See* 11 U.S.C. § 362(a)(1); *Thuesen v. Amerisure Ins.*, 487 S.W.3d 291, 297 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (addressing bankruptcy stay in appeal of Rule 91a motion). The bankruptcy court may grant relief from the stay. *See* 11 U.S.C. § 362(d); *Thuesen*, 487 S.W.3d at 297. If a bankruptcy court has not lifted the stay and a party or state court takes action in violation of the bankruptcy stay, such action is void. *York v. State*, 373 S.W.3d 32, 37-40 (Tex. 2012); *Thuesen*, 487 S.W.3d at 297. Section 362 concerns actions against a debtor, and the automatic stay under section 362 is designed to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors. *Reliant Energy Servs. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (noting that section 362 is rarely valid basis for staying actions against nondebtors); *see Boucher v. Shaw*, 572 F.3d 1087, 1092 (9th Cir. 2009) (noting that stay does not protect nondebtor parties or their property and that "section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other nondebtor parties liable on the debts of the debtor"); *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993) (rejecting general partners' contention that automatic stay in section 362 should extend to benefit them because "any

24

proceeding against the general partners would necessarily impair the debtor's right to compel contribution from its partners, thus interfering with the debtor's property").

Appellants contend that the automatic stay in section 362(a)—which would have statutorily enjoined them from enforcing the cost awards if those awards were property of the Banyan and Orange Blossom bankruptcy estates—is inapplicable here and does not protect the nondebtor Appellees or their property.[14]  Notably, Appellees did not brief any response to Appellants' contentions on appeal about the inapplicability of the bankruptcy stay.  Because section 362(a) concerns actions against a debtor and because the stay in section 362(a) is designed to protect assets of the debtor, the statutory stay generally does not apply to actions against nondebtors.  *See Reliant Energy Servs.*, 349 F.3d at 825; *see also Boucher*, 572 F.3d at 1092; *Patton*, 8 F.3d at 349.  Thus, we conclude that the automatic stay in section 362 did not apply to stay Appellants' underlying action against the nondebtor Appellees.

### 6.  Injunction under 11 U.S.C. § 105

Finally, Appellants contend that if there were concerns about any effect that the prosecution of their causes of action against Appellees might have on the bankruptcy estates, the proper remedy would have been for the bankruptcy trustee to seek, in bankruptcy court, a preliminary injunction to stop such prosecution under section 105 of the Bankruptcy Code:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title

---

[14]  The record reflects that in 2016, the bankruptcy trustee's attorney wrote a letter to Appellants' attorney and offered to sell the trustee's potential section 723 claims against then-general partner Donald Grammer, or to employ Appellants' attorney as "special counsel" to evaluate those claims.  The bankruptcy trustee for Banyan and Orange Blossom, Thomas H. Casey, was copied on the letter.  Neither the bankruptcy trustee nor his attorney asserted that the section 362 automatic stay extended to the general partner's assets for the benefit of the bankruptcy estates.

25

providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a); *see Seaport Auto. Warehouse, Inc. v. Rohnert Park Auto Parts, Inc.* (*In re Rohnert Park Auto Parts, Inc.*), 113 B.R. 610, 615 (B.A.P. 9th Cir. 1990) (discussing section 105 injunctions and noting that bankruptcy court is granted limited discretionary power to issue such orders as necessary or appropriate to carry out provisions of Title 11, Bankruptcy Code). A trustee seeking a section-105 injunction, like a trustee bringing a section-723(a) cause of action, would have to initiate an adversary proceeding affording Appellants all requisite procedural protections. *See* Fed. R. Bankr. P. 7001(7) (stating that part VII of bankruptcy rules of procedure apply to "adversary proceedings," which include proceedings to obtain injunction or other equitable relief, except when plan under chapter 9, 11, 12, or 13 provides for that relief). But a bankruptcy court may not permanently enjoin, beyond confirmation of a reorganization plan, a creditor from enforcing a state-court judgment against the debtor's guarantors. *Rohnert Park Auto Parts*, 113 B.R. at 615 (citing *American Hardwoods, Inc. v. Deutsche Credit Corp.* (*In re Am. Hardwoods, Inc.*), 885 F.2d 621, 624-25 (9th Cir. 1989)).

Here, the bankruptcy trustee did not seek a section-105 injunction against Appellants and the bankruptcy cases subsequently closed.[15] Even if the trustee had sought and obtained a section-105 injunction, the bankruptcy court could not have permanently enjoined Appellants from pursuing their causes of action against Appellees or discharged the obligations

---

[15] The record reflects that as of 2016, the bankruptcy trustee's attorney was aware of the concluded Gillespie County litigation against Donald Grammer and potential section-723 claims against him as general partner. The bankruptcy trustee made no claims against any general partner asset in that case or in the underlying Travis County case.

of nondebtors such as the Grammers, as the order on the Rule 91a motion has effectively done. *See Rohnert Park Auto Parts*, 113 B.R. at 615.

As we have noted, the district court's order on the Rule 91a motion addressed only whether there was a legal—not factual—basis for the causes of action; i.e., whether Appellants were entitled to the relief they sought on their claims as pled. That order relied specifically on sections 87A.365 and 87A.530 of Nevada Revised Statutes and section 541(a) of the Bankruptcy Code to conclude that dismissal was proper under Rule 91a. For all the reasons set forth fully in the preceding six subsections, we conclude that the Nevada limited-partnership law and the Bankruptcy Code provisions presented in support of the Rule 91a motion did not provide a basis for the district court's dismissal order. Thus, we next consider whether the dismissal order is sustainable on other grounds presented to the district court in support of the Rule 91a motion.[16]

**Affirmative defenses of limitations and release**

In addition to their arguments about Nevada limited-partnership law and bankruptcy, Appellees' Rule 91a motion raised affirmative defenses of limitations and release and attached several documents to their motion. Specifically, Appellees contended that Appellants' claims were time barred (limitations), encompassed by a settlement in the Gillespie

---

[16] Appellants note that the district court's order included specific grounds for its ruling—relying exclusively on the limited-partnership law of Nevada and federal bankruptcy law—and that the Rule 91a order said nothing about Appellees' unpled affirmative defenses of limitations and release. However, the specificity of the district court's order does not limit the scope of our review on appeal. *Cf. Cincinnati Life Ins. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) (concluding that, in interest of judicial economy, appellate court reviewing summary judgment may consider "other grounds that the movant preserved for review and trial court did not rule on"). Because Appellees presented the district court with additional grounds for its Rule 91a dismissal order, besides the bankruptcy issue on which they prevailed, we may consider those additional grounds regardless of whether the district court expressly ruled on them. *See id.*

County case (release), and could have been brought in prior litigation.[17] Appellees' Rule 91a motion stated generally that a cause of action is subject to dismissal if it has no basis in law or fact, and that Appellants' claims met "one or both of these standards for dismissal."

A cause of action has no legal basis under Rule 91a "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." Tex. R. Civ. P. 91a.1. Appellees' Rule 91a motion specifically contended that Appellants' causes of action had no legal basis: "Plaintiffs' petition does not sufficiently plead any viable cause of action against Defendants to entitle the claimants to the relief sought." A cause of action has no factual basis under Rule 91a if "no reasonable person could believe the facts pleaded." *Id*.[18]

Dismissal under Rule 91a was proper only if the allegations in Appellants' amended petition—taken as true, together with inferences reasonably drawn from them—do not entitle Appellants to the relief sought. *See* Tex. R. Civ. P. 91a.1. Under Rule 91a.6, the trial court is not to consider evidence in ruling on the motion and "must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by

---

[17] As we have noted, Appellees' answer did not plead any affirmative defenses. *See* Tex. R. Civ. P. 94 ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . release, . . . statute of limitations, . . . and any other matter constituting an avoidance or affirmative defense).

[18] Appellees' Rule 91a motion referenced this standard, but Appellees did not apply the standard in their motion or argument to the court by pointing to facts in Appellants' pleading that "no reasonable person could believe." *See id.* R. 91a.2 (stating that Rule 91a motion to dismiss must specify why claim has no basis in law or in fact, or both); *Renate Nixdorf GmbH & Co. KG v. TRA Midland Props., LLC*, No. 05-17-00577-CV, 2019 Tex. App. LEXIS 26, at *30-31 (Tex. App.—Dallas Jan. 3, 2019, pet. denied) (mem. op.) (noting that appellees failed to assert that "no reasonable person could believe the facts pleaded" and concluding that trial court erred to extent that it granted Rule 91a motion on basis that TUFTA causes of action had no basis in fact). Accordingly, we consider the only contention that Appellees presented to the district court: whether Appellants' causes of action had any legal basis under Rule 91a.

28

Rule 59." *Id*. R. 91a.6. Rule 59 provides that documents "constituting, in whole or in part, the claim sued on, or the matter set up in defense," may be deemed part of the pleadings:

> Notes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense, may be made a part of the pleadings by copies thereof, or the originals, being attached or filed and referred to as such, or by copying the same in the body of the pleading in aid and explanation of the allegations in the petition or answer made in reference to said instruments and shall be deemed a part thereof for all purposes. Such pleadings shall not be deemed defective because of the lack of any allegations which can be supplied from said exhibit. No other instrument of writing shall be made an exhibit in the pleading.

Tex. R. Civ. P. 59.

Here, Appellants' amended petition alleges a complex set of facts that do not affirmatively demonstrate Appellees' entitlement to prevail under Rule 91a on either statute of limitations or release defenses.

### 1. Statute of limitations

Appellants anticipated the statute-of-limitations defense by pleading the discovery rule and the continuing-tort doctrine. Appellees contend that the "claim that the discovery rule has tolled the applicable statutes of limitations has no basis in law or fact." However, this presents a dispute that relies partly on the facts giving rise to the tolling and continuing-tort allegations, which cannot be determined from the pleadings and pleading exhibits permitted by Rule 59. Thus, this matter is not suitable for resolution under Rule 91a. *See id.* R. 91a.6; *cf. Cox v. Kaelin*, 577 F. App'x 306, 309 (5th Cir. 2014) (noting that federal courts have option of converting motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) into motion for summary judgment after providing notice to parties); Timothy Patton, *Motions to Dismiss Under Texas Rule 91a: Practice, Procedure & Review*, 33 Rev. Litig. 469, 513 (2014) (noting that

option of converting motion to dismiss into motion for summary judgment is not available under Rule 91a).

### 2. Release

Appellees also contend that when the Gillespie County litigation settled on June 9, 2014, Sunbelt released them of "all claims, causes of action, etc., from any action or event that occurred as of that date in connection with all claims that could have been brought in the Gillespie County action, with the exception of any and all claims remaining in the California Van Dan litigation." Appellees state that Sunbelt has sued them for a 2011 cost award from the Van Dan litigation, that these costs were awarded three years before the settlement, and that the costs were no longer a "claim remaining" to be determined in the Van Dan litigation. Appellees contend that "this $40,749.24 cost award could have been sued for in the Gillespie County litigation, and was released by the Gillespie County settlement."

However, the amended petition alleges that "[o]n November 13, 2014, the Court awarded costs to Sunbelt in the amount of $40,749.00 and Baer in the amount of $42,091.00, plus interest as permitted by law."[19] Appellees' Rule 91a motion attached a copy of the cost award to Sunbelt in the Van Dan litigation dated November 13, 2014—four months after the Gillespie County settlement. Thus, Appellees' release defense is either unsupported by their own documents attached to their 91a motion, or presents an issue of disputed fact—unsuitable for determination under Rule 91a—as to what claims remained pending after the Gillespie County settlement and when the California court made its cost award to Sunbelt. *See* Tex. R. Civ. P. 91a.6. In either circumstance, Appellees have not shown that Sunbelt lacks a legal basis

---

[19] There is a slight discrepancy in the amount of the cost award pled. The amended petition alleges an award to Sunbelt of $40,749.00, but the court's cost award to Sunbelt in the record totals $40,749.24.

30

for its claim and would not be entitled to the relief it sought, i.e., the $40,749.00 cost award, as alleged in the amended petition. *See id.* R. 91a.1.

On this record, we conclude that Appellees have not shown, through their limitations or release defenses, that Appellants lacked a legal basis for their causes of action or that Appellees defeated the allegations in the amended petition such that Appellants would not be entitled to the relief they sought. *See id.* Thus, the Rule 91a dismissal order is not sustainable on either the limitations or release grounds.

**Recasting Rule 91a motion as plea to jurisdiction**

Anticipating their need for evidence supporting the 91a dismissal order, Appellees compare this case to *City of Austin v. Liberty Mutual Insurance*, 431 S.W.3d 817, 822 n.1 (Tex. App.—Austin 2014, no pet.), and contend that their Rule 91a motion should be treated as a plea to the jurisdiction. *Cf. id.* at 822 (noting municipality's assertion in Rule 91a motion that governmental immunity deprived trial court of subject-matter jurisdiction over claims and concluding that court's denial of motion asserting such immunity could be challenged by interlocutory appeal). After such recasting of their Rule 91a motion, Appellees note, we "may consider any evidence [relating to jurisdiction] offered, Rule 91a.6 notwithstanding."

The comparison to *City of Austin* is not persuasive. Unlike the municipality in that case, Appellees' Rule 91a motion did not challenge the district court's subject-matter jurisdiction but merely stated that a cause of action could be dismissed because it has no basis in law or fact and that Appellants' claims met "one or both of these [Rule 91a] standards for dismissal." At the Rule 91a hearing, Appellees presented no challenge to the district court's subject-matter jurisdiction. They now contend that the district court could only have subject-

31

matter jurisdiction if the party pursuing the underlying claims had standing to do so, and that the bankruptcy trustee is the only person with standing to assert the underlying claims.

The cost awards and fraudulent transfer cause of action were property of Appellants, and they had standing because they were personally aggrieved parties with enforceable rights and a justiciable interest in the outcome of the suit filed against Appellees. *See, e.g.*, *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005) (noting that "issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome"); *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996) ("A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority."). The cost awards, as we have discussed, do not allege harm to Banyan and Orange Blossom, were issued against Banyan and Orange Blossom and in favor of Appellants, and could not have been enforced by Banyan and Orange Blossom against anyone as of the commencement of the bankruptcy cases. Similarly, the fraudulent transfer cause of action does not allege harm to, or a transfer made by, the Banyan or Orange Blossom debtors, but complains only of actions between the Appellees that were intended to hinder Appellants' collection efforts. We have further noted that there was no determination, or reasonable certainty, of a deficiency in assets to support a trustee's 723(a) action against any general partner of Banyan and Orange Blossom. Accordingly, we reject Appellees' contention that their Rule 91a motion should be recast as a plea to the jurisdiction on appeal because the bankruptcy trustee is the only person with standing to assert the underlying claims. We sustain Appellants' first issue.[20]

---

[20] Based on our disposition of Appellants' first issue, we need not address their remaining issues as to whether the district court erred by considering evidence in derogation of

32

**CONCLUSION**

We reverse the district court's September 6, 2017 order granting the Rule 91a motion to dismiss, reverse the November 9, 2018 judgment awarding attorney's fees under Rule 91a, and remand this cause to the district court for further proceedings consistent with this opinion.

_____
Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Smith

Reversed and Remanded

Filed:   December 31, 2019

---

Rule 91a.6, refusing to reconsider its dismissal order, and awarding attorney's fees. *See* Tex. R. App. P. 47.1 (requiring appellate court to issue written opinion addressing every issue raised and necessary to final disposition of appeal).